```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

JOHNNY KIRKSEY                                    CIVIL ACTION

VERSUS                                            NO: 07-304

EL PASO NATURAL GAS CO., ET                       SECTION: "A" (2)
AL.
```

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment or Partial Summary Judgment (Rec. Doc. 61)** filed by defendants Floore Industrial Contractors, Inc. and Mark Floore. Plaintiff, Johnny Kirksey, opposes the motion.[1] The motion, set for hearing on January 9, 2008, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.

**I. BACKGROUND**

This lawsuit arises out of an accidental shooting that took place at the Southern Natural Gas TOCA facility. Defendant Pat

---

[1] Defendants Southern Natural Gas Company and American Summit Insurance Co. have filed responses to the motion into the record.

Creel accidently shot plaintiff Johnny Kirksey, a co-worker, in the arm while on the grounds.

In late 2005, Southern Natural Gas Co. hired Floore Industrial Contractors ("FIC") to do remediation work at its TOCA facility located in St. Bernard Parish. The facility had sustained severe damage during Hurricane Katrina. Plaintiff Johnny Kirksey ("Kirksey") and defendant Pat Creel ("Creel") were both employed by FIC. Kirksey was employed as an equipment operator and Creel was one of two supervisors on the site.

On January 15, 2006, which was a Sunday, the crew had finished their shift for the day sometime around 12 noon or 1:00 p.m. Kirksey and Creel proceeded to Creel's trailer-home which was located on the facility property. Several FIC employees had chosen to live on the site although their jobs did not require this. Kirksey and Creel had brought their personal travel-trailers to the site for living purposes. Kirksey's wife Melissa, who was also employed by FIC, lived in the trailer with him. Bunk houses were provided for those employees who did not have their own trailers. The onsite trailers were a necessary convenience in the aftermath of Katrina because there were no nearby hotels or other properties to rent and the crew was working extremely long hours.

Kirksey had gone to Creel's trailer to borrow some DVDs for

2

personal use and to look at some guns that Creel had bought to clean up.  Creel reached up to grab one of the guns from a shelf, it fell, hit the table, and shot Kirksey in the arm.  (Kirksey depo. at 17).  Creel admits that FIC personnel had instructed the employees not to bring firearms to the facility.  It is undisputed that the shooting was accidental.

Creel attempted to stop the bleeding which was profuse at first.  Creel sought out another employee to determine where the nearest hospital was located.  Creel, Kirksey, and Kirksey's wife Melissa then got in Creel's truck and headed for the hospital in Slidell, Louisiana.[2]

On the way to Slidell Creel called defendant Mark Floore ("Floore") but got his voice mail.[3]  Floore later returned the call and admonished Creel to get Kirksey to the hospital as soon as possible.  (Creel depo. at 28).  According to Creel, Floore later called him back a second time and told him that it was "decision making time" and that it was "not going to be good for that to happen on the job.  It needs to be a hunting accident or up in Hattiesburg, or whatever, but y'll [sic] need to make your mind up to make the decision what you're going to call this."

---

[2] No hospitals or emergency facilities were functioning in St. Bernard Parish at the time.

[3] It is unclear from the record exactly what Mr. Floore's position with the company was at the time.

(Creel depo. at 28). Creel said that he would discuss the matter with Kirksey and call Floore back.

According to Creel, Kirksey said that they could call it a hunting accident or say that it happened at Creel's house to get it away from the job "because it won't be good for the job."[4] (Creel depo. at 29). Creel says that Kirksey made the decision to go to Hattiesburg in order to distance the matter from the jobsite. Floore called back and told them that if they could make it to Hattiesburg then that was the place to go. (Creel depo. at 29). By this time the bleeding had stopped.

According to Kirksey, he was in shock after the shooting and everything was kind of blurry. (Kirksey depo. at 37). He did not know whose decision it was to go to the hospital in Hattiesburg but he never objected and he admits that he did agree to go even though the trip was extended by about an hour. (Id. at 37-38, 110, 122). Kirksey knew that Creel had spoken to someone on the phone while they were in the truck but Kirksey did not know who Creel was talking to. (Id. at 40, 109). Kirksey says that after Creel hung up from one of the calls he told Kirksey that they would both be fired from their jobs over the

---

[4] Kirksey now admits that he falsely told Creel's insurer, defendant American Summit, that the shooting had taken place at Creel's home. (Kirksey depo. at 115).

incident if they went to a Louisiana hospital.  (Id. at 109). Kirksey denies that anyone with FIC told him to lie about the incident.  (Id. at 65).  During these conversations in the truck Kirksey never actually spoke to Floore.  (Creel depo. at 31). Creel denies that Floore made any threats about them being fired if they did not lie about the incident.  (Creel depo. at 32, 44, 51-52).[5]

Kirksey returned to work within a few weeks after the incident.  FIC continued to pay him so Kirksey suffered no lost wages as a result of the incident.  His medical bills, which appear to be few thus far, have not been paid.  Shortly, after Kirksey returned to the TOCA facility he was told that Southern Natural would not allow him back on the site.  Kirksey had allegedly phoned Southern Natural and made threats after his wife Melissa ran off with another employee at the site.

## II. DISCUSSION

### A. *The Parties' Contentions*

FIC and Floore advance several arguments in support of summary judgment.  They argue that if Creel and Kirksey were in

---

[5] Kirksey's and Creel's depositions were the only ones submitted to the Court for consideration.  Other than a few letters which are not material to the issues before the Court, the sole evidence upon which the parties rely at this time are the depositions of Kirksey and Creel.

the course and scope of their employment when the accidental shooting occurred, a necessary premise to hook FIC on a theory of vicarious liability, then worker's compensation law would bar Kirksey's claim as to FIC. Alternatively, if Creel and Kirksey were not acting in the course and scope of their employment, then FIC is not liable because it owed no duty to Kirksey to ensure that its employees were not bringing firearms to the job site. Floore argues that he cannot be liable because Creel was an employee of FIC, not of Mark Floore individually. Finally, to the extent that Kirksey seeks to hold FIC and Floore liable for the extended hospital ride to Hattiesburg, defendants point out that Kirksey has no evidence that he suffered any damages as a result of the extended drive time.[6]

In opposition, Kirksey contends that worker's comp does not bar his claims against FIC because he and Creel were not within the course and scope of their employment when the shooting occurred. Nevertheless, Kirksey contends that FIC had an independent duty to provide a safe place to work and because Kirksey remained on the job site FIC should be liable. Kirksey contends that Floore became individually liable by encouraging

---

[6] Defendants American Summit and Southern Natural have also weighed in on the motion. American Summit and Southern Natural urge the Court to find that Creel was acting in the course and scope of his employment when he shot Kirksey.

him to lie about the incident.

### *B.  Law and Analysis*

The Court's analysis necessarily begins with a determination of whether Creel was acting within the course and scope of his employment when the shooting occurred.  If the answer is yes, then Louisiana worker's compensation law will preclude many of the claims brought against FIC (and Creel and potentially Southern Natural) in this lawsuit.  On the other hand, if Creel was not in the course and scope of his job then FIC can be potentially liable for its own negligence but it cannot be vicariously liable for Creel's conduct.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has

initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

An employee's exclusive remedy against his employer for an injury arising out of and occurring within the course and scope of his employment is worker's compensation benefits.  Bostwick v. M.A.P.P., 707 So. 2d 441, 444 (La. App. 5th Cir. 1997). Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer.  Orgeron v. McDonald, 639 So. 2d 224, 226-27 (La. 1994) (citing W. Page Keeton, Prosser & Keeton on the Law of Torts § 70 (5th ed. 1984)).  Whether an employee is within the course and scope of his employment is a question that is only answerable by general rules because of the

8

unending contexts in which the question may arise.  Id.

An employer is responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business.  Id. (citing LeBrane v. Lewis, 292 So. 2d 216 (La. 1974)).  In determining whether the employee's conduct is employment-rooted, the court assesses several factors, including the payment of wages by the employer, the employer's power of control, the employer's duty to perform the particular act, the time place and purpose of the act in relation to service to the employer, the relationship between the act and the employer's business, the benefits received by the employer from the act, the motivation of the employee in performing the act, and the reasonable expectation of the employer that the employee would perform the act.  Id. (citing Reed v. House of Decor., Inc., 468 So. 2d 1159 (La. 1985)).  The mere locale of an accident standing alone will not dictate whether tort or workman's compensation should be applied.  Justice v. Sylvester, 499 So. 2d 590, 593 (La. App. 5th Cir. 1987).

To be sure, FIC's goals were furthered by having the crew live on the job site even though they were not required to do so. By housing the employees on the site FIC was able to respond

9

immediately to Southern's Natural's needs.  Also, the crews were able to work much longer hours.  And given the lack of available housing in the area, the employees would have faced extremely long commutes had they not been living on site.  These long commutes would certainly have reduced the number of hours they were able to work.  While the Court has no doubt that under some set of facts an injury occurring in one of the living trailers could be found to have been sustained in the course and scope of employment, the facts in this case do not support such a conclusion.

First of all, the fact that Creel shot Kirksey while they were in the onsite employee housing area does not automatically deem the accident as one occurring within the course and scope of employment.  The law is clear that the mere locale of the accident does not control.  In fact injuries sustained in *employer-owned* housing in cases with facts more compelling than these have been found to be outside of the course and scope of employment.  See, e.g., Bostwick, 707 So. 2d at 441.  Thus, the location of the injury in this case, which is the only aspect of the shooting that could arguably be employment-related, is not dispositive.

Second, the other facts surrounding the shooting do not support a finding of course and scope.  The work day had ended

10

for Creel and Kirksey when they headed for Creel's trailer.  They were no longer being paid.  Creel's privately-owned trailer was his home on the site and the two men had gone there as social friends.  Their purpose in going to the trailer was strictly personal in nature and completely unrelated to their work.  The "act" which led to Kirksey's injury, i.e., the decision to examine the gun, was not done in furtherance of FIC's goals and FIC received no benefit from that act.  The shooting did not arise out of some disagreement or altercation that had its roots in their work that day--it was completely unplanned and accidental.  Under the facts of this case, Creel was not acting in the course and scope of his employment with FIC when he shot and injured Kirksey.

Because the injury was not sustained in the course and scope of employment, Kirksey's claims against FIC and Floore can proceed unfettered by the worker's compensation bar.  Kirksey can sue FIC and Floore for any negligence on their part that caused his injury.  According to Kirksey this is a case of first impression in that an employer should be held liable for failing to provide a safe environment for its employees even though the employee sustains injuries outside the course and scope of his employment.  Kirksey contends that FIC owed him an independent duty to provide a safe worksite, including a safe living area.

To establish negligence Kirksey must prove that FIC 1) owed him a duty, 2) that FIC breached that duty, 3) causation, and 4) damages.  Chaisson v. Avondale Indus., Inc., 947 So. 2d 171, 180 (La. App. 4th Cir. 2006) (citing Boykin v. La. Transit Co., 707 SO. 2d 1225, 1230 (La. 1998)).  "Generally, a duty is defined as the obligation to conform to the standard of conduct associated with a reasonable man in like circumstances."  Id. (quoting Fox v. Bd. of Supervisors, 576 So. 2d 978, 981 (La. 1991)).  When determining whether a duty exists the court looks to the "facts and circumstances of the case and the relationship of the parties."  Id. (quoting Fox, 576 So. 2d at 981).

Kirksey's position is problematic for several reasons.  The duty upon which Kirksey relies, i.e., the duty to provide a safe environment for the FIC employees to live and work, grows exclusively out of the employer/employee relationship between the parties.  FIC had instructed its employees that firearms were not to be brought to the job site.  If FIC was lax in enforcing the policy, and if lax enforcement caused Kirksey's injury, then the injury arose out of the breach of a duty that FIC owed to Kirksey as its employee.  There is simply no legal support for the contention that FIC, as Kirksey's employer, owed him an "independent" duty *in its capacity as his employer* to protect him from the injury at issue here.  To the extent that the injuries

12

sustained arise out of the breach of a duty imposed because of the employer/employee relationship then worker's compensation will bar the claim.  And to the extent that the injury did not arise in the course and scope of employment thereby avoiding the worker's compensation bar, the duty that Kirksey relies upon for his claim will not attach.  Simply said, Kirksey cannot have it both ways.

Because Creel and Kirksey were not acting in the course and scope of their employment when Kirksey was injured, the claim for negligence vis à vis FIC and Floore can only be based on the general duty that any premises owner would owe to an invitee. But Kirksey was not an invitee of either FIC or Floore when he sustained his injury and neither FIC nor Floor owned the premises.  Kirksey was injured while visiting Creel's privately-owned trailer, which at the time was serving as the functional equivalent of his home, and Kirksey was there at Creel's invitation.  Under the facts, neither FIC nor Floore owed Kirksey a duty to protect him from the injury he sustained.

Finally, Kirksey seeks to hold Floore personally liable because Floore suggested that Creel and Kirksey would lose their jobs if they revealed where the shooting had actually occurred. Kirksey also contends that Floore promised to help pay for Kirksey's medical bills.

13

The Court has read the entirety of the Creel and Kirksey depositions and nothing in them supports a claim against Floore individually under any theory.  Kirksey fails to explain how anything that Floore said to Creel on the phone on the way to the hospital caused Kirksey's injury.  Those conversations occurred *after* the shooting and Kirksey testified that no doctor has opined that the extended drive to the hospital in Hattiesburg exacerbated his injuries.  Further, nothing in the depositions suggest that Floore personally promised to pay Kirksey's medical bills.  Kirksey did not testify that any such promise was made to him by Floore.  In his deposition Creel claims that Floore told him that he would cover the medical bills.  Ignoring the hearsay within hearsay character of that statement, it still does not follow that Floore promised Kirksey that he would be personally liable for the medical bills.  Further, the record does not suggest that Kirksey even knew about the alleged promise when he agreed to go to the Hattiesburg hospital for treatment. Kirksey has failed to create an issue of fact as to Floore's individual liability.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment or Partial Summary Judgment (Rec. Doc. 61)** filed by defendants Floore Industrial Contractors, Inc. and Mark Floore is **GRANTED.**

Plaintiff's complaint against these defendants is dismissed.

January 28, 2008

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE